

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURA CHRISTIE, | ) |
| Plaintiff, | ) No. 17-cv-6783 |
| v. | ) |
| DOREE FORECKI, et al., | ) Hon. Charles R. Norgle |
| Defendants. | ) |

## ORDER

Defendants' motion for summary judgment [27] is denied in part and granted in part. Civil case terminated.

## MEMORANDUM OPINION

This is a diversity action brought under 28 U.S.C. 1332, in which the Plaintiff Laura Christie, a citizen of Indiana, alleges she sustained injuries while riding a horse owned by Defendants Doree Forecki and Terry Forecki—both citizens of Illinois. In her complaint, Christie brings negligence claims, along with a claim for a violation the Animal Control Act, 510 ILCS 5/1, *et seq* ("ACA"). Defendants have moved for summary judgment. The thrust of Defendants' motion is that the Illinois Equine Activity Liability Act, 745 ILCS 47, *et seq*. ("EALA"), prohibits liability from Plaintiff's claims. For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits. Because Plaintiff is the nonmoving party, the Court construes the facts in the light most favorable to her. The following facts are undisputed

unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." King v. Chapman, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

On July 7, 2015, Plaintiff Laura Christie and Defendant Doree Forecki went horseback riding together. The parties both owned horses that were boarded near the Plum Creek Forest Preserve adjacent to the Timberland Ranch in Chicago Heights, Illinois. The parties had different levels of experience riding horses. Plaintiff Christie was the most experienced, having received formal horseback riding training beginning at four years old in the 1970s, and has been riding horse since.

The equine excursion began around seven o'clock in the evening with Plaintiff Christie riding her horse, Shooter, and Defendant Forecki riding Romeo, a horse known to have a gentle demeanor. After twenty minutes of walking their horses, the parties entered an open field and decided to switch horses. Up to this point in the ride neither party saw Romeo act violently or aggressively.

This was Plaintiff's second time riding Romeo. Within the first couple minutes, Plaintiff circled around the open field by first walking, trotting, and finally cantering Romeo. Plaintiff recalled riding Romeo in English style, also known as "plough reigning." Headed in the direction of a large tree, Plaintiff attempted to adjust Romeo's course to the left, at which point Romeo reared up on his back legs three times. Plaintiff remained on Romeo, holding the reigns, until Romeo flipped backwards, ultimately causing injuries to Plaintiff.

Initially, on July 6, 2017, Plaintiff filed this complaint in the Superior Court of Lake County, Indiana. The case was removed to the Northern District of Indiana and subsequently

2

transferred to the Northern District of Illinois. In her complaint, Plaintiff alleges claims for negligence, and a claim under the ACA. Defendants have motion for summary judgment on several issues of law: the application of the EALA, claims for willful and wanton conduct, and the application of the ACA. This motion is now pending before the Court.

## II. LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 648 (7th Cir. 2011) ("A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence."). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The following facts are undisputed unless otherwise noted. When the Court cites a fact as being undisputed that a party has attempted to dispute, it means the Court has made a determination that

3

the "evidence cited in the response does not show that the fact is in genuine dispute." King v. Chapman, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322).

### III. ANALYSIS

A federal court sitting in diversity applies state law to resolve all substantive questions. Havoco of America, Inc. v. Hilco, Inc., 799 F.2d 349, 352-53 (7th Cir. 1986). Defendants argue that Plaintiff's claims are barred under the EALA. Plaintiff asserts that because the EALA derogates common law, particularly to claims brought under a negligence theory, this Court must construe the statute in Plaintiff's favor. Specifically, Plaintiff states that neither she nor Defendants of qualify as members the protected of the classes—equine activity sponsors or equine professionals—under the statute, and Defendants' reliance on Carl v. Resnick, 714 N.E.2d 1, 2

(Ill. App. Ct. 1999), as modified on denial of reh'g (July 28, 1999), and section 15 of the EALA, in isolation, is misplaced.

A.  **Illinois Equine Activity Liability Act**

The EALA prevents certain persons from being held liable for negligent acts involving equine activities. By limiting liability, the Act "encourage[s] equine activities by delineating the responsibilities of those involved in equine activities" and to recognizing that "persons who participate in equine activities may incur injuries as a result of the risks involved in those activities." 745 ILCS 47/5. The statute recognizes that equine activities can be hazardous to those involved even when reasonable precautions are taken. Section 15 defines equine participant's responsibilities: "Each participant who engages in an equine activity expressly assumes the risk of and legal responsibility for injury, loss, or damage to the participant or the participant's property that results from participating in an equine activity…" 745 ILCS 47/15.

"[T]he Act does not preclude negligence liability for persons other than equine activity sponsors and equine professionals." Kush v. Wentworth, 790 N.E.2d 912, 918 (Ill. App. Ct. 2003). However, section 20 provides the limited situations when an "equine activity sponsor" or "equine professional" could be subjected to liability if their actions are deemed willful or intentional. 745 ILCS 47/20. The parties do not dispute that at the time of the incident both Plaintiff Christie and Defendant Forecki were not acting as equine activity sponsors or equine professionals, but rather they were riding recreationally. Def. LR 56.1 ¶ 16; Pl. LR 56.1(b) ¶ 16. Defendants, however, assert that the EALA prevents liability in situations when defendants are not equine activity sponsors or equine professionals.

Plaintiff argues Defendants are using selective citations to cobble together their argument. First, Defendants argue that under section 10(c)(4) Plaintiff is a participant engaged in equine

5

activity. According to Defendants, recreationally riding a horse belonging to another is an "equine activity" as defined under section 10(c)(4). Thus, Plaintiff qualifies as a participant in an equine activity because she was riding Defendants' horse when she suffered injuries.

For support, Defendants rely on dictum in Carl, a case in which the Illinois appellate court held the EALA did not apply to a plaintiff that was injured while riding her own horse. Specifically, Defendants here, rely on the court's reference to the argument made on appeal that the "equine activity" defined in section 10(c)(4) applied. See Carl, 714 N.E.2d at 3 ("Defendant discusses only one of the categories of activities enumerated in section 10(c): "[r]iding, inspecting, or evaluating an equine belonging to another ….).

In Carl, the plaintiff went trail riding on her horse. She was joined by defendant and another rider, both of whom rode horses owned by the defendant. At some point, the riders stopped to speak with one another. Then while the riders talked, a horse turned towards the plaintiff and kicked both the plaintiff and the horse she sat on. The plaintiff was struck with the miscreant horse's hoof and suffered injury. The court held that the Act did not apply in the case because the plaintiff was riding her own horse, and thus not engaged in an "equine activity" at the time she suffered injury.

Unlike the court in Kush, which addressed the issue of when the EALA applies and ultimately held "the Act does not preclude negligence liability for persons other than equine activity sponsors and equine professionals"; the court in Carl did not. Kush, 790 N.E.2d at 917 (citing Carl, 714 N.E.2d at 4) ("We do not address plaintiff's contention that only "equine activity sponsors" and "equine professionals" (defendant admittedly not being either) are insulated from liability by the Act.").

6

Instead, focused on the factual distinction that plaintiff was on her own horse when injured (as opposed to a horse owned by defendant), the court in Carl, quickly dismissed the defendant's argument that section 10(c)(4) provides the basis for applying the statute, by stating: "We fail to see how the activity in which plaintiff was engaged prior to her injury in the instant case falls within this description." Carl, 714 N.E.2d at 3. This Court also fails to see how section 10(c)(4) is applicable here. Defendants' quotation of section 10(c)(4) is heavily truncated, their argument, derived from the short quotation, runs afoul of several canons of statutory interpretation. See, e.g., Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280 (2010) (*noscitur a sociis*); People ex rel. Madigan v. Burge, 2014 IL 115635 (general/specific). When read together, as the text should be, see TRW Inc. v. Andrews, 534 U.S. 19 (2001), section 10(c)(4) involves the activities associated with purchasing a horse—like test driving a used car before purchase. The selective quoting of section 10(c)(4), that Defendants suggest, leads to inordinately broad interpretation of equine activity.

Even if the Court were to momentarily accept Defendants' position that section 10(c)(4) is extraordinarily broad in scope, and therefore, Plaintiff was participant under its terms, the Act would still not apply here. Defendants argument that section 15 precludes plaintiffs from maintaining negligence claims if they are participants under section 10 is wrong. Defendants' position, in effect, would prevent all plaintiffs who suffer injuries while ride someone else's horse from bringing negligence claims.

But, as Plaintiff points out—"to the extent that the Act precludes [Plaintiff from] recover[ing] under a negligence theory, it is a statute in derogation of the common law." Smith v. Lane, 832 N.E.2d 947, 950 (Ill. App. Ct. 2005); Kush, 790 N.E.2d 912, 915 (Ill. App. Ct. 2003). Because the EALA prevents Plaintiff from bringing negligence claims against certain persons, it

7

must be construed in her favor. See id.; see also Barthel v. Illinois Cent. Gulf R. Co., 384 N.E.2d 323, 327 (Ill. 1978) ("The rule in Illinois is that statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation."). As such, the Court will read nothing into the statute by intendment or implication. Id. at 162 (citing Chandler v. Illinois Central R.R. Co., 776 N.E.2d 315 (Ill. App. Ct. 2002)).

Defendants are urging the Court to read into the statute a far-reaching prohibition that has the potential to affect many without explicit language from the legislature. The Court declines the invitation. Adopting Defendants' expanded interpretation would produce an absurd result of inoculating all persons who are neither equine activity sponsor nor equine professionals from liability. People v. Swift, 781 N.E.2d 292 (Ill. 2002) ("In interpreting statutes, we must avoid constructions [that] would produce absurd results"); In re T.W., 932 N.E.2d 125, 132 (Ill. App. Ct. 2010) ("We will also presume the legislature did not intend an absurd, inconvenient, or unjust result in enacting the legislation."). If it were the case, as Defendants suggests, that under 10(c)(4) the EALA bars claims brought by all plaintiffs who suffered injuries while riding a horse owned by another, then "people other than equine activity sponsors and equine professionals" would be "immune from liability even where they intentionally injure a participant," an absurd result that the legislature could not have intended. Kush, 790 N.E.2d at 916 (Ill. App. Ct. 2003). Therefore, the EALA does not apply here, because doing so would produce an absurd result.

**B.     Animal Control Act**

Defendants have moved for summary judgment on Plaintiff's claim brought under the ACA. "[A] plaintiff who assumes the role of an "owner" under the Animal Control Act loses the protections afforded by that Act regardless of any relationship to the defendant. Carl, 714 N.E.2d at 7 (Ill. App. Ct. 1999) (citing Docherty v. Sadler, 689 N.E.2d 332 (Ill. App. Ct. 1997). It is

8

undisputed that Plaintiff was an experience rider who at one point had ridden Romeo before the incident. Further, it is undisputed that Plaintiff chose to ride Defendants' horse. In doing so, once Plaintiff mounted Romeo, she assumed control and responsibility for the animal, therefore, she "could no longer be realistically viewed as innocent bystander[] who [has] in no way provoked the animal[]." See Meyer v. Naperville Manner, Inc., 634 N.E.2d 411 (Ill. App. Ct. 1994).

Because Plaintiff voluntarily assumed control of Romeo, she "cannot recover for injuries sustained when…she fail[ed] to control the animal." Ennen v. White, 598 N.E.2d 416, 419 (Ill. App. Ct. 1992). "There is no legal or policy justification for extending the protections of the Act to a rider of a horse. Once the rider mounts the horse, the rider is no longer a bystander or observer but is someone who has asserted dominion over the animal and is an active partner with the animal in recreational activity." Id. Accordingly, Plaintiff is not in the class of persons that ACA was created to protect. Thus, the Defendants' motion for summary judgment for the claim brought under the ACA is granted.

## C.  Willful and Wanton

Defendants have moved for summary judgment on the Plaintiff's claims for willful and wanton conduct. Under Illinois law, no separate and distinct tort exists for willful and wanton conduct. Krywin v. Chicago Transit Auth., 938 N.E.2d 440, 452 (Ill. 2010). "To recover damages based upon a defendant's alleged negligence involving willful and wanton conduct, the plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury." Id.; see also Doe v. Coe, 2019 IL 123521, ¶ 78 ("A plaintiff must allege and prove the same elements for a willful and wanton cause of action as she does for a negligence action."). The Court, therefore, examines the purported stand alone willful and wanton claims as negligence claims.

Plaintiff has brought three claims for common law negligence under different theories of liability. Plaintiff alleges that Romeo was improperly trained and should not have been ridden by someone with her experience, Defendants failed to disclose that Romeo was unusually dangerous, and the riding equipment used was faulty. Despite Plaintiff's arguments for relief, the evidence and undisputed facts would prevent a reasonable fact finder from ruling in Plaintiff's favor. During her deposition, Plaintiff testified to, among other things, the following:

- Plaintiff received lessons in trail riding during 1974-78 (Christie Dep. 49:10-50:1, June 14, 2018, ECF. 29 Ex. A);
- Plaintiff learned how to ride both Western and English style (id. 50:2-4);
- Plaintiff learned to show horses and jump horses (id. 53:18-23);
- Plaintiff rented or rode horses from 1978 until 1985 when she bought her first horse (id. 54:14-21);
- Plaintiff has ridden between 10-50 horses during her life (id. 67:7-22);
- Plaintiff rode Romeo on a previous occasion before the incident (id. 86:4-7);
- Before trail riding on the day of the incident, Plaintiff drank alcohol and smoked marijuana (id. 97:1-98:1);
- Before mounting Romeo, Plaintiff observed his saddle and bit, which did not look to Plaintiff to be faulty, defective, or in a state of disrepair (id. 78:4-23);
- Plaintiff is a much more experience rider than Defendant Doree Forecki (id. 107:16-19); and
- Plaintiff was the person who suggested that they switch horses so that Plaintiff rode Romeo and Defendant Forecki rode Plaintiff's horse (id. 127:10-23).

It is clear from Plaintiff's own testimony that she is an experience horse rider. A reasonable fact finder would not conclude that someone with as much time riding and maintaining horses could not comprehend the inherent risks of riding horseback. Plaintiff is knowledgeable about the animals, as they have been part of her life starting in the 1970s.

Before taking their horses out to the trail, the parties drank alcohol and smoked marijuana. Even though riding horses can require the ability to make quick decisions involving keen judgment and motor skills, neither party has raised the issue of inebriation. After twenty minutes of uneventful and otherwise pleasant trail riding, it was Plaintiff who suggested that they switch horses during the ride. And it was also Plaintiff who decided to canter Romeo and then attempt to turn him left, after which, Romeo reared up. Plaintiff chose to bring Romeo to cantering speed and given her experience as a rider, she was well aware of the need to make quick decisions while riding a horse and the risks of not being able to do so.

In the end, Plaintiff assumed control over the animal while being fully informed of the risks. See Harris v. Walker, 519 N.E.2d 917, 920 (Ill. 1988) ("We believe that only the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked or "side-shocked" and cause a rider to fall from the horse.").

Plaintiff has not provided any evidence that a horse who rears or bucks is unusually dangerous, particularly to a person like Plaintiff with years of riding experience. See Ennen, 598 N.E.2d 416, 418 (Ill. App. Ct. 1992) ("She does not, however, explain why she, too, should not be charged with the knowledge about horses' propensity to buck."). The Court, therefore, finds that no reasonable fact finder would enter judgment in Plaintiff's favor, and thus, Defendant is entitled to a ruling as a matter of law.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment is granted in part and denied in part, resulting in this case being dismissed.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 28, 2019